25CA0627 Peo v Becker 07-02-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0627
Larimer County District Court No. 00CR206
Honorable Joseph D. Findley, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Joel Howard Becker,

Defendant-Appellant.

ORDER AFFIRMED

Division V
Opinion by JUSTICE MARTINEZ*
Yun and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 2, 2026

Philip J. Weiser, Attorney General, Paul Koehler, Senior Counsel, Denver, Colorado, for Plaintiff-Appellee

Joel Howard Becker, Pro Se

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     Defendant, Joel Howard Becker, appeals the postconviction court's order denying his Crim. P. 35(c) motion for postconviction relief. We affirm.

## I.     Background

¶ 2     Becker pleaded guilty to first degree sexual assault and second degree burglary. He was sentenced to the custody of the Department of Corrections (DOC) for an indeterminate term of forty-eight years to life for the sexual assault and a consecutive, determinate term of twelve years for the burglary. A division of this court affirmed the sentences. *See People v. Becker*, (Colo. App. No. 01CA0151, May 23, 2002) (not published pursuant to C.A.R. 35(f)). The mandate issued in October 2002.

¶ 3     Years later, the prosecution gave Becker written notice of potential impeachment information regarding a Colorado Bureau of Investigations (CBI) forensic scientist endorsed as a trial witness in his case. The notice stated that "the District Attorney ha[d] NOT been advised by [the] CBI that in [Becker's] case any anomalies were found in [the scientist's] work product," but provided the information pursuant to Colo. RPC 3.8(d) because it "would affect a defendant's decision about whether to accept a plea disposition."

1

The notice indicated that it would be accompanied by a CBI internal affairs report.

¶ 4    In February 2025, Becker filed a Crim. P. 35(c) motion challenging the validity of his guilty plea.  Liberally construing the motion, we determine that he effectively asserted that, because he had no recollection of the underlying incident, his decision to plead guilty was based on DNA evidence linking him to the sexual assault — a connection he now claims is undermined by the new impeachment information.  Becker also alleged that the prosecution failed to provide him with the CBI internal affairs report and that he needs the report and a hearing to substantiate his claim. Additionally, Becker argued that his plea counsel was ineffective for misadvising him regarding his parole eligibility and his sentencing exposure if convicted after a trial.  Lastly, Becker acknowledged that his motion was untimely but argued that the recently discovered impeachment information constituted justifiable excuse or excusable neglect for the untimely filing.

¶ 5    In March 2025, the postconviction court summarily denied Becker's motion, finding that he had not established any exception

to the timeliness procedural bar and had provided no evidence of anomalies in the forensic scientist's work done on his case.

## II. Legal Authority and Standard of Review

¶ 6 "[A] challenge to a conviction based on a guilty plea is usually limited to whether the plea was knowing, voluntary, and intelligent." *Sanchez-Martinez v. People*, 250 P.3d 1248, 1255 (Colo. 2011). As relevant here, a defendant can challenge the validity of their guilty plea based on newly discovered evidence, *see People v. Schneider*, 25 P.3d 755, 761-62 (Colo. 2001), or allegations of ineffective assistance of counsel, *see People v. Stovall*, 2012 COA 7M, ¶ 13.

¶ 7 A challenge to the validity of a defendant's plea is properly brought under Crim. P. 35(c). *People v. Rockwell*, 125 P.3d 410, 414 (Colo. 2005). A defendant need not set forth the evidentiary support for their allegations in a Crim. P. 35 motion but instead need only assert facts that if true would provide a basis for relief. *White v. Denv. Dist. Ct.*, 766 P.2d 632, 635 (Colo. 1988). A Crim. P. 35(c) motion for postconviction relief may be denied without an evidentiary hearing only where the motion, files, and record clearly

establish that the defendant's allegations are without merit and do not warrant relief. *Ardolino v. People,* 69 P.3d 73, 77 (Colo. 2003).

¶ 8 Further, a defendant must file a Crim. P. 35(c) motion within three years of their conviction for an offense other than a class 1 felony. § 16-5-402(1), C.R.S. 2025; Crim. P. 35(c)(3)(I). As relevant here, a conviction becomes final when the mandate is issued following a direct appeal. *People v. Prendergast,* 2024 COA 127, ¶ 28.

¶ 9 But a postconviction claim shall be excluded from the three-year time limitation period if a court finds that the "failure to seek relief within the applicable time period was the result of circumstances amounting to justifiable excuse or excusable neglect." § 16-5-402(2)(d). Newly discovered evidence can constitute justifiable excuse or excusable neglect for an untimely filed motion. *People v. Clouse,* 74 P.3d 336, 340 (Colo. App. 2002).

¶ 10 We review de novo the summary denial of a Crim. P. 35(c) motion. *People v. Cali,* 2020 CO 20, ¶ 14. Also, "[w]hether a defendant has demonstrated justifiable excuse or excusable neglect is a question of fact to be resolved by the trial court." *People v. Shepherd,* 43 P.3d 693, 698 (Colo. App. 2001). "If the record

4

supports the trial court's findings, we will not disturb them on appeal." *Id.*

### III. Analysis

¶ 11    We conclude that the postconviction court did not err by denying Becker's Crim. P. 35(c) motion.  *See People v. Hamm*, 2019 COA 90, ¶ 23 ("[W]e will affirm a district court's denial of a Rule 35 motion on any ground supported by the record . . . ."); *see also People v. Hartkemeyer*, 843 P.2d 92, 92 (Colo. App. 1992) (a court's failure to make findings of fact or conclusions of law in denying a Crim. P. 35(c) motion does not require reversal if the error was harmless).

¶ 12    First, regarding justifiable excuse or excusable neglect for his ineffective assistance of counsel claims, Becker baldly asserted that he could not have previously raised his ineffective assistance claims without the new impeachment information.  Because he does not adequately explain how this information related to the sufficiency of counsel's plea advisements, we conclude that Becker failed to demonstrate that his delay in asserting the ineffective assistance claims was due to justifiable excuse or excusable neglect.  *See Clouse*, 74 P.3d at 340 ("A defendant must allege in a Crim. P. 35

5

motion facts that, if true, would establish justifiable excuse or excusable neglect for a belated filing."); *see also People v. Houser*, 2020 COA 128, ¶ 24 (we will not consider a bald legal proposition presented without argument or development).

¶ 13    Notably, Becker acknowledged that he knew his counsel's parole eligibility advisement was purportedly deficient in, at the latest, 2019 when his challenge to the DOC's parole eligibility calculation was rejected.  Yet he did not assert the ineffective assistance claim until nearly six years later.  *See People v. Wiedemer*, 852 P.2d 424, 441 (Colo. 1993) ("In making th[e] determination [regarding the applicability of the justifiable excuse or excusable neglect exception,] we believe it appropriate to consider the circumstances existing throughout the entire period from the inception of the conviction in question."); *see also People v. Cordova*, 199 P.3d 1, 4 (Colo. App. 2007) (In determining whether a defendant established justifiable excuse or excusable neglect, the court must consider, among other things, "whether a defendant who had reason to question the constitutionality of a conviction investigated its validity and took advantage of avenues of relief that were available.").

¶ 14    Therefore, because Becker filed his ineffective assistance claims more than three years after his conviction became final and failed to establish an exception to the time limitation, we conclude that the claims were properly denied because they were untimely. § 16-5-402(1), (1.5); Crim. P. 35(c)(3)(I).

¶ 15    Next, we are persuaded that the recent discovery and notice of the new impeachment information would constitute justifiable excuse or excusable neglect for Becker's untimely challenge to his guilty plea on that basis.  Nonetheless, we ultimately conclude that the court did not err even though it denied the claim without a hearing.

¶ 16    Initially, we note that the record does not definitively confirm what the DNA testing revealed or what DNA evidence would have been presented at trial.  Indeed, in their pretrial filings contesting the admissibility of the DNA evidence, the parties acknowledge only that the CBI tested DNA collected from the scene of the sexual assault to determine whether it matched Becker's DNA.  Becker's effort to exclude the DNA evidence suggests that the testing indicated that his DNA matched the DNA collected from the scene of the sexual assault to some statistical degree.  But, without knowing

the actual DNA testing results, we are hampered in our ability to evaluate what effect the new impeachment evidence regarding the CBI forensic scientist would have had on the DNA evidence.

¶ 17 Nevertheless, the motion, files, and record establish that Becker is not entitled to relief even if the new impeachment evidence completely negates the DNA evidence. *See Ardolino*, 69 P.3d at 77.

¶ 18 The affidavit in support of warrantless arrest contained the following facts: (1) the sexual assault occurred around 2 a.m., and the victim described the perpetrator as a "white male, 18-25 years of age, wearing a red coat, blue jeans, and a stocking cap," with a "bar bell" piercing through his tongue; (2) at 1:37 a.m., a Colorado State University police officer reported that "he made a pedestrian contact with a subject identified as Joel Becker" who "was wearing a red coat and matched the physical description of the [sexual assault] suspect"; (3) during an initial interview, officers observed that "Becker had a bar bell type piercing in his tongue" and "closely matched the physical description and composite drawing of the sexual assault suspect"; and (4) in a follow-up interview, "Becker

8

admitted to entering the victim's apartment without her consent and forcing her to have sex with him."

¶ 19 Further, Becker's pretrial motion to suppress contained the following allegations: (1) "Becker allegedly admitted his involvement with the sexual assault" to a detective; (2) during a police interview, Becker "not only provided inculpatory information, but agreed to ride with officers to areas where Mr. Becker claimed he had discarded evidence, and also provided information about other areas in which officers later discovered evidence"; (3) "upon the conclusion of the interview at the police station, other detectives took Mr. Becker to areas around the scene to search for additional evidence"; and (4) "[d]uring Mr. Becker's statement, he provided [the detective] with information that led to the recovery of other evidence."  In its order denying this motion, the court found that "[i]t [wa]s uncontested that [Becker] engaged in a lengthy interview with [the detective] wherein he made incriminating statements."

¶ 20 Also, in a pretrial motion for discovery, Becker noted that, on a recording of his police interview, he told the detective that "he . . . couldn't live with himself because of what he had done."  Further, a pretrial court order denying a motion to suppress indicated that,

when Becker was arrested and the police found a bus ticket on his person, Becker told officers, "now I can't run."

¶ 21    At the sentencing hearing, the prosecutor stated, "Joel Becker was interviewed . . . two weeks after the sexual assault and recounted details of the sexual assault to [the detective].  He admitted he had raped [the victim].  He described it with quite a bit of detail."  The prosecutor further noted that, before his arrest, Becker "had a one-way bus ticket in his pocket to, I believe it was Las Vegas, but he had already cashed it in and gotten a bus ticket.  He had a duffel bag full of his worldly possessions and was about to flee this jurisdiction."

¶ 22    During his sentencing argument, defense counsel made the following remarks:

- "[P]lanning Mr. Becker's defense . . . hasn't been easy given the evidence the prosecution has marshalled."

- "[Becker] confessed.  When confronted by [the detective] . . . , he hung his head, he was quiet, and appeared to her [to be] depressed.  He appeared to her as somebody who couldn't wait to talk.  It was obvious to her he was

carrying the weight of guilt on his shoulders. And when she had him alone, he did not hesitate to admit his guilt."

- "[Becker] admit[ted] in the course of this investigation to everything he is accused of except oral sex. He admitted the casing, scissors, vaginal and anal penetration, remembered details, asking [the victim] her name. He volunteered details that [the detective] hadn't asked about. Every detail was a nail in his coffin, but he gave it up anyway."

- "[Becker] never covered his face. He doesn't change his clothes, even though he had been hanging out with a bunch of people immediately prior to committing this act. This offense, in fact, was committed within an hour or two of contact with a Colorado State University police officer. And despite that, Mr. Becker doesn't even change the sweatshirt he was wearing at the time of this offense."

¶ 23    Finally, during his statement to the court, Becker said, "I would like to apologize to [the victim] for everything that I've put you through" and acknowledged, "I know that I have done a terrible thing."

¶ 24    The above record belies Becker's assertion that he did not recall the underlying incident and that he pleaded guilty because the DNA evidence linked him to the charged offenses.  In light of this overwhelming non-DNA evidence of Becker's criminal culpability, we are not persuaded that the newly discovered impeachment information relevant to the DNA evidence undermines the validity of Becker's guilty plea.  *See Schneider*, 25 P.3d at 762 (In order to withdraw a guilty plea based on newly discovered evidence, a defendant must prove, in part, that "the charges that the People filed against the defendant, or the charge(s) to which the defendant pleaded guilty were actually false or unfounded; and . . . the newly discovered evidence would probably bring about a verdict of acquittal in a trial.").

¶ 25    We note Becker's claim that he has still not received the CBI internal affairs report.  The record appears to show that the report was provided to Becker on a compact disc, but he was dissatisfied with that format and requested the report in paper format.  Even assuming Becker's assertion is correct that the report would extensively detail the CBI forensic scientist's misconduct, we are

not persuaded that such impeachment evidence would alter our conclusions above.

¶ 26    Finally, Becker argues that he is entitled to relief under the recently enacted Colorado Forensic Science Integrity Act, *see* §§ 16-12-301 to -312, C.R.S. 2025.  However, "[t]his act applies to claims for relief filed on or after the effective date of this act that are based on knowing misconduct or a significant event, as defined in this act, that occurred before, on, or after the effective date of this act."  Ch. 352, sec. 5, 2025 Colo. Sess. Laws 1906-07.  Because Becker's February 2025 Crim. P. 35(c) motion was filed before the Act's June 2025 effective date, he cannot convert his Crim. P. 35(c) motion into a petition for relief under the Act.  Ch. 352, sec. 6, 2025 Colo. Sess. Laws 1907; *see also* § 16-12-310(1), C.R.S. 2025 ("[A] defendant who was convicted of a criminal offense who receives a notice of reported wrongful action pursuant to section 16-12-306 . . . has a right to petition for relief pursuant to this part 3.").

¶ 27    We do not address any claim not reasserted on appeal, *see People v. Brooks*, 250 P.3d 771, 772 (Colo. App. 2010), or any argument asserted for the first time in a reply brief, *see People v. Grant*, 174 P.3d 798, 803 (Colo. App. 2007).

## IV.  Disposition

The order is affirmed.

JUDGE YUN and JUDGE SCHUTZ  concur.